Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| 1LIFE HEALTHCARE, INC., PAUL R. AUVIL, MARK S. BLUMENKRANZ, KALEN F. HOLMES, AMIR DAN RUBIN, BRUCE W. DUNLEVIE, DAVID P. KENNEDY, FREDA LEWIS-HALL, ROBERT R. SCHMIDT, SCOTT C. TAYLOR, and MARY ANN TOCIO, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1. This is an action brought by Plaintiff against 1Life Healthcare, Inc. ("One Medical" or the "Company") and the members of One Medical's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which One Medical will be acquired by Amazon.com, Inc. ("Amazon") through Amazon's subsidiary Negroni Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On July 21, 2022, One Medical and Amazon issued a joint press release announcing entry into an Agreement and Plan of Merger dated July 20, 2022 (the "Merger Agreement") to sell One Medical to Amazon. Under the terms of the Merger Agreement, each One Medical stockholder will receive $18.00 in cash for each share of One Medical common stock (the "Merger Consideration"). The Proposed Transaction is valued at approximately $3.9 billion.

3. On August 24, 2022, One Medical filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that One Medical stockholders vote in favor of the Proposed Transaction, omits, or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); and (ii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, One Medical's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff

seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.  The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8.  Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of One Medical.

9.  Defendant One Medical is a Delaware corporation, with its principal executive offices located at One Embarcadero Center, Suite 1900, San Francisco, California 94111. The Company operates a membership-based primary care platform under the One Medical brand. One Medical's common stock trades on the Nasdaq Global Select Market under the ticker symbol "ONEM."

10. Defendant Paul R. Auvil ("Auvil") has been a director of the Company since September 2019.

11. Defendant Mark S. Blumenkranz ("Blumenkranz") has been a director of the Company since November 2019.

12. Defendant Kalen F. Holmes ("Holmes") has been a director of the Company since January 2017.

13. Defendant Amir Dan Rubin ("Rubin") has been Chairman of the Board, President, Chief Executive Officer ("CEO"), and a director of the Company since September 2017.

14. Defendant Bruce W. Dunlevie ("Dunlevie") is Lead Independent Director and has been a director of the Company since June 2007.

15. Defendant David P. Kennedy ("Kennedy") has been a director of the Company since June 2007.

16. Defendant Freda Lewis-Hall ("Lewis-Hall") has been a director of the Company since November 2019.

17. Defendant Robert R. Schmidt ("Schmidt") has been a director of the Company since August 2018.

18. Defendant Scott C. Taylor ("Taylor") has been a director of the Company since June 2021.

19. Defendant Mary Ann Tocio ("Tocio") has been a director of the Company since September 2021.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Amazon engages in the retail sale of consumer products and subscriptions in North America and internationally. It sells merchandise and content purchased for resale from third-party sellers through physical and online stores, and manufactures and sells electronic devices, including

Kindle, Fire tablets, Fire TVs, Rings, and Echo and other devices. For the year ended December 31, 2021, Amazon recognized net sales of $469.8 billion and employed approximately 1,608,000 full and part-time employees.

22. Merger Sub is a Delaware corporation and an indirect wholly-owned subsidiary of Amazon.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23. One Medical is a U.S. national human-centered and technology-powered primary care organization with seamless digital health and inviting in-office care, convenient to where people work, shop, live, and click. As of December 31, 2021, the Company has grown to approximately 736,000 total members including 703,000 Consumer and Enterprise members and 33,000 At-Risk members and operates 182 medical offices in 25 markets across the United States.

24. The Company's technology platforms advance consumer engagement and health through proactive digital health screenings, post-visit digital follow-ups, real-time access to medical records, and around-the-clock availability of Company providers. One Medical's technology platforms also provide insights for its care teams across the populations that aid in Company care delivery. One Medical supports more than 8,500 enterprise clients across a diverse set of industries in achieving key goals of their health benefits offerings such as attracting and engaging employees, improving employee productivity and well-being, and delivering higher levels of value-based care. Health networks partner with the Company for consumer-driven care, direct-to-employer relationships, coordinated networks of attributable lives, and At-Risk arrangements where One Medical is responsible for managing a range of healthcare services and associated costs for members.

25. On August 3, 2022, One Medical announced its second quarter 2022 financial results and business developments. Total membership count as of quarter-end was 790,000 compared to

621,000, an increase of 27% year-over-year. Net revenue was $255.8 million for the quarter compared to $120.4 million in the prior year period, a 112% increase. Reflecting on the Company's results, defendant Rubin stated:

> At One Medical during the second quarter we continued to advance our mission to transform healthcare through our human-centered and technology-powered model. We believe that at One Medical we have an exciting opportunity to deliver better health outcomes, better care experiences, and lower costs, within a better team environment.

**The Proposed Transaction**

26.     On July 21, 2022, One Medical and Amazon issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> SEATTLE & SAN FRANCISCO--(BUSINESS WIRE)-- July 21, 2022—Today Amazon (NASDAQ:AMZN) and One Medical (NASDAQ:ONEM) announced that they have entered into a definitive merger agreement under which Amazon will acquire One Medical. One Medical is a human-centered, technology-powered national primary care organization on a mission to make quality care more affordable, accessible, and enjoyable through a seamless combination of in-person, digital, and virtual care services that are convenient to where people work, shop, and live.
>
> "We think health care is high on the list of experiences that need reinvention. Booking an appointment, waiting weeks or even months to be seen, taking time off work, driving to a clinic, finding a parking spot, waiting in the waiting room then the exam room for what is too often a rushed few minutes with a doctor, then making another trip to a pharmacy – we see lots of opportunity to both improve the quality of the experience and give people back valuable time in their days," said Neil Lindsay, SVP of Amazon Health Services. "We love inventing to make what should be easy easier and we want to be one of the companies that helps dramatically improve the healthcare experience over the next several years. Together with One Medical's human-centered and technology-powered approach to health care, we believe we can and will help more people get better care, when and how they need it. We look forward to delivering on that long-term mission."
>
> "The opportunity to transform health care and improve outcomes by combining One Medical's human-centered and technology-powered model and exceptional team with Amazon's customer obsession, history of invention, and willingness to invest in the long-term is so exciting," said Amir Dan Rubin, One Medical CEO. "There is an immense opportunity to make the health care experience more accessible, affordable, and even enjoyable for patients, providers, and payers. We look forward to innovating and expanding access to quality healthcare services, together."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Amazon will acquire One Medical for $18 per share in an all-cash transaction valued at approximately $3.9 billion, including One Medical's net debt. Completion of the transaction is subject to customary closing conditions, including approval by One Medical's shareholders and regulatory approval. On completion, Amir Dan Rubin will remain as CEO of One Medical.

**Insiders' Interests in the Proposed Transaction**

27. One Medical insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of One Medical.

28. Notably, certain Company insiders have secured positions for themselves with the surviving company. In connection with the signing of the Merger Agreement and contingent upon closing of the Proposed Transaction, defendant Rubin has entered into a letter agreement with Amazon pursuant to which he will serve as CEO of One Medical following closing, with an annual base salary of $350,000. Additionally, effective as of the closing date, defendant Rubin is eligible for a sign-on payment in the aggregate amount of $3,775,000. Defendant Rubin will also be granted an award of Amazon restricted stock units ("RSUs") with a value of $15,000,000.

29. Moreover, Company insiders stand to reap substantial financial benefits for securing the deal with Amazon. On August 8, 2022, in consultation with Amazon, One Medical granted retention awards in the form of One Medical RSUs ("Retention One Medical RSUs"), to certain of the Company's named executive officers. The grants included Retention One Medical RSUs each with the following grant date value: $4,000,000 for Mr. Bjorn Thaler; $2,000,000 for Mr. Andrew S. Diamond, and $4,000,000 for Ms. Lisa A. Mango.

30. Further, pursuant to the Merger Agreement, all outstanding Company options and RSUs held by Company insiders will vest and convert into the right to receive cash payments. The

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

following table summarizes the value of ordinary shares, Company options, and RSUs that Company insiders stand to receive upon closing of the merger:

| Name | Shares #(1) | Shares $ | Options #(2) | Options $ | RSUs #(3) | RSUs $ | Total |
|---|---|---|---|---|---|---|---|
| Amir Dan Rubin | 349,125 | 6,284,250 | 17,644,333 | 108,471,305 | — | — | 114,755,555 |
| Bjorn Thaler | 28,874 | 519,732 | 1,332,139 | 7,009,467 | 333,849 | 6,009,282 | 13,538,481 |
| Andrew S. Diamond | 110,751 | 1,993,518 | 415,225 | 2,467,107 | 204,360 | 3,678,480 | 8,139,105 |
| Lisa A. Mango | 88,385 | 1,590,930 | 448,803 | 2,319,741 | 324,458 | 5,840,244 | 9,750,915 |
| Kimber D. Lockhart(4) | 337,251 | 6,070,518 | — | — | — | — | 6,070,518 |
| Paul R. Auvil | 10,512 | 189,216 | 19,695 | 68,317 | 20,728 | 373,104 | 630,637 |
| Mark S. Blumenkranz, M.D | 4,534 | 81,612 | 15,675 | 66,854 | 20,728 | 373,104 | 521,570 |
| Bruce W. Dunlevie | 675,769 | 12,163,842 | 8,249 | 0 | 20,728 | 373,104 | 12,536,946 |
| Kalen F. Holmes, Ph.D. | 4,534 | 81,612 | 29,373 | 157,236 | 20,728 | 373,104 | 611,952 |
| David P. Kennedy | 259,583 | 4,672,494 | 18,876 | 68,317 | 20,728 | 373,104 | 5,113,915 |
| Freda Lewis-Hall, M.D. | 4,534 | 81,612 | 15,675 | 66,854 | 20,728 | 373,104 | 521,570 |
| Robert R. Schmidt | — | — | — | — | — | — | — |
| Scott C. Taylor | 6,272 | 112,896 | — | — | 25,262 | 454,716 | 567,612 |
| Mary Ann Tocio | 42,516 | 765,288 | 12,214 | 175,515 | 30,631 | 551,358 | 1,492,161 |

31. In addition, if they are terminated in connection with the Proposed Transaction, One Medical's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Amir Dan Rubin | $ 2,015,000 | $ 14,857,080 | $ 46,802 | $ 16,918,882 |
| Bjorn Thaler | $ 800,000 | $ 9,112,326 | $ 17,942 | $ 9,930,268 |
| Andrew S. Diamond | $ 640,000 | $ 4,491,219 | $ 22,903 | $ 5,154,122 |
| Lisa A. Mango | $ 562,500 | $ 7,100,097 | $ 22,030 | $ 7,684,627 |

**The Proxy Statement Contains Material Misstatements or Omissions**

32. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to One Medical's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

33. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (ii) the background of the Proposed Transaction.

**Material Omissions Concerning Morgan Stanley's Financial Analyses**

34. The Proxy Statement omits material information regarding Morgan Stanley's financial analyses.

35. The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses Morgan Stanley performed in support of its opinions. However, the descriptions of Morgan Stanley's fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, One Medical's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

36. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate of 14.8% used in the analysis; (ii) One Medical's net debt as of year-end 2024, assuming a future projected common equity issuance; and (iii) the fully diluted common shares of One Medical as of years-end 2024.

37. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates of 12.9% to 14.0% used in the analysis; (ii) quantification of the net cash of One Medical as of June 30, 2022; (iii) quantification of the present value of a future projected common equity issuance; (iv) the fully diluted shares of One Medical used for the analysis; and (v) the implied terminal multiples resulting from the analysis.

38. Without such undisclosed information, One Medical stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full

disclosure of the omissions identified above is required to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

39. The omission of this material information renders the statements in the "Opinion of Morgan Stanley & Co. LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

40. The Proxy Statement omits material information regarding the sale process leading to the Proposed Transaction.

41. For example, the Proxy Statement sets forth that

[o]n November 16, 2021, One Medical and Party A entered into a confidentiality agreement to facilitate due diligence between the parties in connection with a potential partnership or other strategic transaction. The confidentiality agreement included a two year standstill provision with a customary exclusion permitting Party A to make proposals to One Medical privately and confidentially.

* * *

[o]n April 24, 2022, One Medical entered into an amendment to an existing commercial non-disclosure agreement between One Medical and Amazon, which amendment included a nine-month standstill provision with a customary exclusion permitting Amazon to make proposals to One Medical privately and confidentially, and provided that the standstill obligations automatically terminate following entrance by One Medical into a definitive agreement providing for a change of control of One Medical.

Proxy Statement at 32, 35.

42. The Proxy Statement fails, however, to disclose whether: (i) the confidentiality agreement entered into with Party A included a fallaway provision whereby the standstill obligations automatically terminate following entrance by One Medical into a definitive agreement providing for a change of control of One Medical or whether the standstill obligations are still in effect; and (ii)

whether Party A is presently permitted by the terms of its confidentiality agreement to make proposals to One Medical privately and confidentially.

.

43. The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of One Medical will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or

omits material facts, including material information about the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

49. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

51. Plaintiff repeats all previous allegations as if set forth in full.

52. The Individual Defendants acted as controlling persons of One Medical within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of One Medical, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, One Medical's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of One Medical, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert

with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to One Medical stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 31, 2022

**WEISS LAW**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile: 310/209-2348
              -and-
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Telephone: 404/692-7910
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS